**In re Benjamin Arata EZAKI, Debtor.**

**Bankruptcy No. 4–92–344.**

United States Bankruptcy Court,
D. Minnesota.

May 26, 1992.

G. Martin Johnson, Johnson and Wentzell, Ltd., Minneapolis, Minn., for debtor.

Edward W. Bergquist, Minneapolis, Minn., Trustee.

## MEMORANDUM ORDER SUSTAINING OBJECTION TO CLAIM OF EXEMPTION

NANCY C. DREHER, Bankruptcy Judge.

### FACTUAL BACKGROUND

During World War II, after the December 7, 1941 attack at Pearl Harbor, a wave of fear and hysteria swept the West Coast of the United States leading to calls for the immediate exclusion of all individuals of Japanese ancestry from the West Coast.[1] In February of 1942, President Franklin D. Roosevelt signed Executive Order 9066 giving the Secretary of War and other military commanders the authority to exclude any and all persons from designated areas in order to provide security against espionage and sabotage. In March of 1942, Congress enacted Public Law 77-503 granting the federal government authority to enforce compliance with directives issued under the executive order. On the authority of these executive and congressional mandates, 120,000 individuals of Japanese ancestry were moved from the West Coast to relocation camps in the interior of the country.

On August 10, 1988, Congress enacted Public Law 100-383, the Civil Liberties Act of 1988 (the "Act"). 50 U.S.C.A. app. §§ 1989-1989d (1990). The Act acknowledges that the relocation and internment "were carried out without adequate security reasons and without any acts of espionage or sabotage documented, ... and were motivated largely by racial prejudice, wartime hysteria, and a failure of political leadership." 50 U.S.C.A. app. § 1989a(a) (1990). Among the enunciated purposes of the Act was the goal of "mak[ing] restitution to those individuals of Japanese ancestry who were interned." 50 U.S.C.A. app. § 1989 (1990). As such restitution, the Act entitles all "eligible individuals" to payment of $20,000 from a fund established by the Act. 50 U.S.C.A. app. §§ 1989b-3, 1989b-4 (1990). An "eligible individual" is defined in relevant part as:

any individual of Japanese ancestry who is living on the date of the enactment of this Act and who, during the evacuation, relocation, and internment period—

(A) was a United States citizen or a permanent resident alien; and

(B) (i) was confined, held in custody, relocated, or otherwise deprived of liberty or property....

50 U.S.C.A. app. § 1989b-7 (1990).

The debtor in the case before me, Benjamin Ezaki, was born in a relocation camp,

---

1. The historical background in this opinion is taken from the report accompanying the Senate bill, S. 1009. S.Rep. No. 202, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 1135.

and claims to be eligible for restitution under the Act in the amount of $20,000. The debtor has elected, under section 522(b)(2) of the Bankruptcy Code, to exempt certain property under state and nonbankruptcy federal law. In his amended Schedule C, the debtor claims his entitlement under the Act as exempt citing both the Act (50 U.S.C.A. app. § 1989b–4(f) (1990)) and the Minnesota exemption statute (Minn.Stat. § 550.37, subd. 22 (1990)) as the laws creating the right to such exemption. Trustee Bergquist objects to the exemption, asserting that the Act contains no express exemption provision of its own, and that the nature of the restitution does not qualify the payment for exemption under the Minnesota exemption statute.

## DISCUSSION

The case before me is one of first impression. This matter is fraught with sensitive questions of public policy regarding the federal government's admitted infringement on the civil liberties of American citizens and permanent resident aliens of Japanese ancestry. I am acutely aware of the hardship that was imposed upon such individuals and the racial prejudice that was the admitted basis for the imposition of such hardship. Accordingly, my decision in this matter is rendered only after careful consideration of the remedial purposes that spawned the Civil Liberties Act of 1988, and the extent to which limitations on an individual's ability to protect the payments provided for under the Act may thwart such remedial goals. The final analysis, however, is dictated by familiar principles of statutory construction and judicial restraint where Congress has unambiguously spoken.

A. *Exemption under Subsection 1989b–4(f) of the Civil Liberties Act of 1988.*

■ The Act itself contains no provision exempting the restitution payments from attachment or execution by creditors, or from administration by a bankruptcy trustee. The debtor admits that there is no such provision and instead relies on section 1989b–4(f) of the Act which provides in relevant part:

Amounts paid to an eligible individual under this section—

(1) shall be treated for purposes of the internal revenue laws of the United States as damages for human suffering.

50 U.S.C.A. app. § 1989b–4(f) (1990). The debtor interprets this reference to the internal revenue laws as a reference to section 104 of the Internal Revenue Code, which excludes certain damages for personal injury or sickness from an individual's gross income. 26 U.S.C. § 104 (1982). He then argues that by protecting restitution payments from taxation as income, Congress has manifested an intent to preserve the payments to the injured individuals generally, rather than their creditors.

I disagree with the debtor's construction of subsection 1989b–4(f). Rather than inferring a general intent to protect restitution payments from all creditors, I infer from Congress' silence regarding creditors other than the United States in a taxing context that the restitution payments were only meant to be protected from taxation as income. As trustee Bergquist correctly points out, there are a multitude of examples of express legislative exemption of benefits from attachment, execution, or levy by creditors, or administration in bankruptcy. *See, e.g.,* 42 U.S.C. § 1717 (1982) (compensation for injury or death due to war risk hazards); 22 U.S.C. § 4060(c) (Supp.1987) (payments for foreign service retirement and disability); 42 U.S.C. § 407(a) (Supp.1987) (social security payments); 46 U.S.C. § 601 (1982) (wage payments of fishermen, seamen and apprentices); 33 U.S.C. § 916 (1982) (payments for death and disability under Longshore and Harbor Workers' Compensation Act); 38 U.S.C. § 770(g) (Supp.1987) (veteran's benefits); 38 U.S.C. § 3101 (Supp. 1987) (special pension payments to winners of Congressional Medal of Honor). In subsection 1989b–4(f) of the Civil Liberties Act of 1988, however, Congress expressly protects restitution payments only from taxation as income. While Congress acknowledges in the Act that a grievous wrong was

committed, and expresses an eloquent national apology for such wrong and an intent to make restitution, it has affirmatively acted to protect restitution payments solely from income taxation, and I conclude that Congress' failure to provide further protection was by design, not oversight.

## B. Exemption under Subdivision 22 of the Minnesota Exemption Statute.

Trustee Bergquist next argues that the restitution payment does not qualify for an exemption under subdivision 22 of the Minnesota exemption statute as claimed by the debtor in his amended schedule C. Subdivision 22 provides an exemption for "[r]ights of action for injuries to the person of the debtor or of a relative whether or not resulting in death." Minn.Stat. § 550.37 subd. 22 (1990). Two issues arise regarding application of subdivision 22 to restitution payments under the Act: first, does the debtor have a "right of action" as contemplated by the exemption statute; and second, are the restitution payments for "injuries to the person."

### 1. Whether the Debtor has a Right of Action.

 There is a distinction between a *right* of action and a *cause* of action. *In re Bailey*, 84 B.R. 608, 610 n. 1 (Bankr. D.Minn.1988). As noted in *In re Bailey*, Black's Law Dictionary defines a right of action as "pertain[ing] to remedy and relief through judicial procedure;" while cause of action is defined as "[t]he facts which give a person a right to judicial relief." *Bailey*, 84 B.R. at 610 n. 1. Using this distinction, the debtor only has a right of action against the government, as that term is used in Minn.Stat. 550.37, subd. 22, to the extent that he has a remedy or available relief through judicial procedure.

Prior to enactment of the Civil Liberties Act of 1988, a class action was brought in the case of *Hohri v. United States*, 586 F.Supp. 769 (D.C.1984) (hereinafter *"Hohri I"*) by nineteen individuals of Japanese ancestry who were interned during World War II. In *Hohri I*, the United States District Court for the District of Columbia held that all tort claims against the government based on the evacuation and internment were barred under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671–2680 (1982), by the plaintiffs' failure to exhaust their administrative remedies, by the FTCA's two-year statute of limitations, and by the exclusion of intentional torts from the FTCA prior to 1974. *Hohri*, 586 F.Supp. at 793. The district court opinion was eventually affirmed in its entirety by the United States Court of Appeals for the Federal Circuit.[2] *Hohri v. United States*, 847 F.2d 779, 779 (Fed.Cir.), *cert. denied*, 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988) (hereinafter *"Hohri II"*).

Similarly, to the extent that the debtor has a cause of action against the government sounding in tort, any claim is barred by the FTCA. First, his claim would be barred because it is untimely based on the FTCA's two-year statute of limitations. 28 U.S.C. § 2401(b) (1982). As stated in *Hohri I*, any "negligence torts" would have become apparent at the time the injuries were sustained. *Hohri I*, 586 F.Supp. at 793. Second, any "intentional law enforcement torts" would have become apparent prior to 1974, a time when such torts were excluded from the FTCA. *Hohri I*, 586 F.Supp. at 793–94. Third, the debtor clearly has not exhausted his administrative remedies as required by 28 U.S.C. § 2675(a) since he claims an entitlement under the Civil Liberties Act of 1988. Since any cause of action the debtor may have is barred, he has no relief or remedy available

---

**2.** Appeal from the district court ruling was originally made to the United States Court of Appeals for the District of Columbia. *Hohri v. United States*, 782 F.2d 227 (D.C.Cir.1986). The court of appeals affirmed in part and reversed in part, and in particular affirmed the portion of the district court opinion holding that the tort claims were barred by the plaintiffs' failure to

exhaust their administrative remedies. 782 F.2d at 245–46. On *certiorari*, the Supreme Court vacated on jurisdictional grounds, and remanded the case with instructions to transfer it to the United States Court of Appeals for the Federal Circuit. 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987).

to him through judicial procedure, and therefore he holds no right of action.

Furthermore, the Act itself creates no new right of action. It simply directs the Attorney General to locate and pay "eligible individuals" as defined by the Act, and does not give such eligible individuals a right to pursue a judicial remedy against the United States.

### 2. Whether Restitution under the Civil Liberties Act of 1988 is for Injury to the Person.

■ The stated purpose of payments under the Act is to "make restitution to those individuals of Japanese ancestry who were interned." 50 U.S.C.A. app. § 1989 (1990). While the compensatory purpose is clear, the statute is less clear regarding the types of injuries for which restitution is being made. The congressional statement contained in the Act states:

> The excluded individuals of Japanese ancestry suffered enormous damages, both material and intangible, and there were incalculable losses in education and job training, all of which resulted in significant human suffering for which appropriate compensation has not been made. For these fundamental violations of the basic civil liberties and constitutional rights of these individuals of Japanese ancestry, the Congress apologizes on behalf of the nation.

50 U.S.C.A. § 1989a(a) (1990). This subsection of the Act is only marginally helpful in determining the types of injuries being redressed by the Act. While the language refers to human suffering, it only enumerates nebulous, indefinite causes of such suffering. The subsection refers to material and intangible losses, and fundamental violations of civil liberties and constitutional rights. The suggestion from such language is that restitution is being provided for a bundle of separate and distinct injuries, the precise nature and quantity of which are undeterminable.

Given this statutory ambiguity, reference to the legislative history of the Act is warranted. The Senate Report, in discussing the historical backdrop of the Act details the effects of internment as follows:

> On very short notice (in some cases as little as 72 hours), families were forced to leave their homes and all belongings, except what they could carry. Most evacuees sold or leased their real estate and business holdings at extremely low prices, and almost all incurred substantial economic losses due to the evacuation.
>
> The majority of the evacuated individuals lived in the relocation centers for the remainder of the war. Camp living conditions were Spartan. The detention caused many kinds of personal injuries which remain difficult to measure: the stigma placed on those who fell under the exclusion and other military orders; deprivation of liberty; the psychological impact of exclusion and detention; the breakdown of family structure; loss of earnings; and physical illness or injury.

S.Rep. No. 202, 100th Cong., 2d Sess. (1988), reprinted in 1988 U.S.C.C.A.N. 1135. In a later discussion the report states that the remedies proposed in the Act were made in light of the fact that interned individuals have only been partially compensated by past measures. Regarding the nature of such measures the report states:

> The 1948 Japanese American Evacuation Claims Act [50 U.S.C. app. §§ 1981–87 (1982 & Supp.1987)] established a procedure for individuals of Japanese ancestry to claim real and personal property losses that occurred as a result of exclusion and evacuation. No claims were allowed for loss of liberty, lost income or pain and suffering. The total amount awarded under the [1948] Act was approximately $38 million. However, it did not fully compensate for loss of property.

Id.

The legislative history is helpful in identifying the nature of the injuries that Congress sought to rectify, but it only bolsters my conclusion that the Act seeks to redress a multitude of unquantifiable injuries. While personal injuries appear to be among those injuries for which payment is being

made, the payments are also addressed to various other damages having nothing to do with injury to the person. Furthermore, there is no record here of any personal injury to the debtor. The debtor's restitution payment under the Act is meant to redress a bundle of injuries, and any particular element of personal injury is simply unidentifiable and unquantifiable. Therefore, the restitution payment cannot be said to be one for "injury to the person."

## CONCLUSIONS

The Civil Liberties Act of 1988 contains no express exemption for restitution payments from administration in bankruptcy and none can be inferred from the plain language of the statute. The restitution payments are also not eligible for exemption under subdivision 22 of the Minnesota exemption statute because they do not constitute rights of action for injury to the person.

Given the circumstances under which the Civil Liberties Act of 1988 was enacted, an exemption of restitution payments from creditors seems just and equitable. However, the achievement of such a result must be sought through Congress, rather than through an expansive interpretation of a state exemption statute which, in my opinion, was not designed to cover a restitution payment intended to redress a broad range of nebulous injuries.

ACCORDINGLY, IT IS HEREBY ORDERED: the trustee's objection to the debtor's claim of exemption in his amended schedule C is SUSTAINED, and the exemption for "War Time Relocation Reimbursement under United States Citizen of Japanese Ancestry and Resident Japanese Aliens" is DISALLOWED in its entirety.