**In re Richard W. PROCTER, Debtor.**

**Bankruptcy No. 4–95–660.**

United States Bankruptcy Court,
D. Minnesota.

Sept. 19, 1995.

Mark A. Olson, Olson Law Office, Burnsville, MN, for debtor.

Randall L. Seaver, Fuller Seaver & Ramette, P.A., Minneapolis, MN, for trustee.

Lawrence R. Johnson, Barna Guzy & Steffen, Ltd., Minneapolis, MN, for Constance Procter Bartlett.

## ORDER DENYING EXEMPTION

ROBERT J. KRESSEL, Bankruptcy Judge.

This case came on for hearing on the objections of James E. Ramette, the trustee, and Constance Procter Bartlett, the debtor's former wife, to the debtor's claimed exemption of $67,000 of proceeds he received from a personal injury settlement. Randall L. Seaver appeared for the trustee. Mark A. Olson appeared for the debtor. Lawrence R. Johnson represented Bartlett.

This court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and Local Rule 201. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

## BACKGROUND

On February 6, 1995, the debtor filed a petition under Chapter 13. On June 14, 1995, the case was converted to a case under Chapter 7 and James E. Ramette was appointed trustee.

On his Schedule C, the debtor, pursuant to Minn.Stat. § 550.37(22), listed as exempt $67,000 of proceeds from a personal injury settlement he had received in 1993. This lawsuit had been brought against the City of Minneapolis and a Minneapolis police officer

and had been settled for approximately $135,000 in November 1993. Presently, the debtor is in possession of $22,000 from these proceeds and the trustee is in possession of approximately $45,000 that had previously been held in escrow by the law firm of Barna, Guzy & Steffen, Ltd., pursuant to an order by the Hennepin County District Court.[1] The trustee and Ms. Bartlett have filed objections to the debtor's exemption claim.[2]

The two principal creditors in this case are Katherine Procter, who has a secured claim on the debtor's homestead in the amount of $74,000, and Constance Procter Bartlett, who has a marital lien on the debtor's homestead in the amount of $14,261 and an unsecured claim for child support arrears in the amount of $11,892.[3]

## ISSUE

The issue in this matter is whether Minn. Stat. § 550.37(22) permits a debtor to claim as exempt proceeds from a personal injury settlement which the debtor received prior to filing for bankruptcy.

## DISCUSSION

**Proceeds from a personal injury settlement which are paid and received in full prior to the filing of the petition are property of the estate and are not exempt pursuant to Minn.Stat. § 550.37(22).**

■ Minn.Stat. § 550.37, subdivision 22, provides an exemption for "rights of action for injuries to the person of the debtor or of

1. Barna, Guzy and Steffen, Ltd., represents Constance Procter Bartlett, the debtor's former spouse. In May 1995, the Hennepin County District Court issued this order in response to motions by Ms. Bartlett seeking an increase in child support payments and sequestration of the settlement proceeds.

2. Ms. Bartlett's objection appears to be untimely. However, the debtor has not made an issue of its timeliness.

3. The Hennepin County Treasurer also filed a secured claim for real estate taxes. The secured claims of Katherine Procter and Hennepin County are payable from the debtor's homestead and not by the trustee out of the property of the estate. Both claims held by Constance Procter Bartlett are nondischargeable and the debtor

would remain liable for these claims. *See* 11 U.S.C. § 523(a)(5). Therefore, even if the debtor is successful and the settlement proceeds were determined to be exempt under Minn.Stat. § 550.37(22), the debtor would remain obligated to pay these claims out of the settlement proceeds at issue. *See In re Scheiber*, 129 B.R. 604 (Bankr.D.Minn.1991); *In re Storberg*, 94 B.R. 144 (Bankr.D.Minn.1988) (holding that the strong and compelling public policy of ensuring the financial support of children favors statutory-imposed special treatment for child support obligations). *See e.g.* Minn.Stat. § 510.07. However, given this debtor's child support payment history, there is a risk that he will not voluntarily meet these obligations.

a relative whether or not resulting in death" from any attachment, garnishment or sale on any final process issued from any court. Minn.Stat. § 550.37(22). Thus, for any settlement proceeds to be exempt under this statute, they must be "rights of action" as contemplated by the statute. *In re Gagne,* 163 B.R. 819, 823 (Bankr.D.Minn.1994), *rev'd in part on other grounds, Gagne v. Christians,* 172 B.R. 50 (D.Minn.1994).

■ The term, "rights of action", is defined as "the right to bring suit; a legal right to maintain an action, growing out of a given transaction or state of facts and based thereon." BLACK'S LAW DICTIONARY 1325 (6th ed. 1990); *In re Gagne,* 163 B.R. at 823; *In re Ezaki,* 140 B.R. 747, 750 (Bankr.D.Minn. 1992) ("rights of action" within the meaning of Minn.Stat. § 550.37, subd. 22, pertains to remedy and relief through judicial proceedings as opposed to "cause of action" which refers to particular facts which give a person a right to judicial relief) (quoting *In re Bailey,* 84 B.R. 608, 610 n. 1 (Bankr.D.Minn. 1988)). This court has consistently construed "rights of action" as referring only to pending or future claims. *See In re Gagne,* 163 B.R. at 823, (finding that settlement proceeds which were received pre-petition were not "rights of action" as contemplated by the exemption statute); *In re Medill,* 119 B.R. 685, 687 (Bankr.D.Minn.1990) (noting that only disputed or contingent claims would likely fall "within the ambit" of the statute); *In re Carlson,* 40 B.R. 746, 750 (Bankr. D.Minn.1984) (holding that settlement proceeds were exempt as "rights of action" only because payment had not been made and releases had not been signed at the time of the filing of the petition).

■ Recent case law is consistent with this precedent. In *In re Dulas,* 177 B.R. 897 (Bankr.D.Minn.1995), *appeal docketed,* No. 4–95–185 (D.Minn. February 17, 1995), the court expanded the scope of "rights of action" to encompass personal injury settlement proceeds which were, for the most part, future payments made under a structured term payment scheme. There, the court's analysis centered around the fact that the payments were to be made post-petition and, as such, were pending at the time of the filing of the petition. However, this expanded construction of "rights of action" is inapplicable to this matter as all of the settlement proceeds in this case were paid in full over fifteen months prior to the date the petition was filed. Furthermore, as of that date, the debtor had signed a Release of Liability releasing and forever discharging all "actions or causes of actions" he may have had against the defendants in that matter. As the *Dulas* court noted, "[t]here is a clear distinction between payment of a settlement in a lump-sum as opposed to payment in a structured settlement over time." *In re Dulas,* 177 B.R. at 899 n. 1. *See In re Gagne,* 163 B.R. at 823, *rev'd on other grounds,* 172 B.R. 50 (D.Minn.1994) (holding that total payment of a settlement in the form of a lump-sum made prepetition is not a "right of action").

The district court has addressed this issue in the context of a worker's compensation lump sum settlement received pre-petition. In *Gagne v. Christians,* 172 B.R. at 51–55, the court held that such a settlement was exempt as worker's compensation benefits but not as "rights of action" as contemplated by Minn.Stat. § 550.37(22). As the court noted, "personal injury settlements are final and complete" and, by inference, are not exempt if they are paid in full prior to the date of the filing of the petition. *Id.* at 54.

■ Furthermore, the plain language of the statute itself refers only to "rights of action" and not to proceeds received prepetition. When interpreting statutory provisions, it is necessary to first analyze the language of the statute itself. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985); *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). "If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *Russello v. United States,* 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (quoting *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100

S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980))). To understand the statutory scheme, one must, "of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). The plain language of the statute is clear. It speaks only to the debtor's "rights of action", not proceeds from the settlement of those rights. Such "rights of action" may be either a contingent claim or a pending settlement agreement not yet paid out or finalized at the time of the filing of the bankruptcy petition. Settlement proceeds paid in full, by its own terms, negate the concept of "rights of action" as the paid party no longer has any "rights" against the defending party. Here, the debtor settled his personal injury claim and received a lump-sum cash payment fifteen months prior to filing his bankruptcy petition. Once these settlement proceeds were received by the debtor, he relinquished any "rights of action" he may have had against the other parties and there was no longer any pending or contingent claim to be determined or payment to be received. As such, this matter was fully settled and reduced to cash in hand in 1993, long before the filing of the petition. Under such circumstances, this debtor is no longer entitled to the benefits provided by Minn.Stat. § 550.37(22).

The legislature has statutorily classified several types of payments and proceeds as exempt, including those from the sale of the homestead (Minn.Stat. §§ 510.01, 510.02. 510.07 and 550.37(12)); insurance proceeds (Minn.Stat. §§ 550.37(10) and (23)); fraternal benefits (Minn.Stat. §§ 550.37(10), 550.37(11), 550.37(23), 550.37(24) and 64B.18); veteran's benefits (Minn.Stat. § 550.38); earnings and child support (Minn.Stat. §§ 550.37(13) and (15)); public assistance (Minn.Stat. § 550.37(14)); worker's compensation (Minn. Stat. § 176.175(2)); unemployment compensation (Minn.Stat. § 268.17(2)); crime victim's compensation (Minn.Stat. § 611A.60); employee, pension and retirement benefits (Minn.Stat. §§ 181B.16, 352.96 and 550.37(24)); and money received on account of the destruction or wrongful taking of exempt property (Minn.Stat. §§ 550.37(9) and (16)).

 Whether particular proceeds should be statutorily classified as exempt is essentially a matter of public policy and, as such, is an issue to be determined only by the legislature. In matters of public policy concerns, courts must defer to the legislature's judgment. *Kassel v. Consolidated Freightways Corp. of Delaware*, 450 U.S. 662, 691–93, 101 S.Ct. 1309, 1327, 67 L.Ed.2d 580 (1981) (stating that matters of public policy can, "under our constitutional system, be fixed only by the people acting through their elected representatives" and are for the state legislature to determine). Here, the legislature has not chosen to exempt settlement proceeds arising from a personal injury claim. The legislature has the ability and knows how to effectively provide exemption protection for proceeds of exempt property if it so chooses. Clearly then, the fact that the legislature omitted any inclusion of proceeds from personal injury claims indicates a deliberate choice not to do so.

Further, courts have been deliberating this issue since 1984, starting with my decision in *In re Carlson*, 40 B.R. at 746 (holding that only actions which are pending or contingent at the time of the filing of the bankruptcy petition constitute "rights of action" as contemplated by the statute), and the legislature, in spite of ample opportunity to do so, has chosen not to address this issue any further or to contradict the precedent that the courts have established.[4]

### CONCLUSION

In light of the case law's construction of the term, "rights of action", the plain lan-

---

**4.** Subdivision 20 was added to the statute in 1976, while subdivisions 22 and 24 were added in 1980. The legislature, in 1983, amended subdivision 20 to include benefits and payments pursuant to subdivision 24 but chose not to afford the same protection to proceeds arising out of subdivision 22. *See generally* Laws 1976, c. 335; Laws 1983, c. 235. Further, the legislature amended the statute as recently as 1993 to clarify ambiguous language and insert an exemption for child support. *See generally,* Laws 1993, c. 13 and c. 156. Clearly, the legislature has recently considered the statutory exemptions and had ample opportunity and ability to amend or clarify them to include proceeds from personal injury settlements if it had seen fit.

guage of the statute, and the legislature's public policy decision regarding the exemption of proceeds from personal injury settlements, the debtor is not entitled to claim the proceeds from his personal injury settlement as exempt.

THEREFORE, IT IS ORDERED THAT: The debtor's claimed exemption of $67,000 of proceeds from a personal injury settlement is denied.